


AO 91 (Rev. 11/11) Criminal Complaint

AUSA Chester Choi (312) 353-5300

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA

v.

OMAR KHAN

CASE NUMBER: 22 CR 8

Judge Harjani

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about December 28, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a) | did knowingly and intentionally distribute a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperindinyl] propanamide, a Schedule II Controlled Substance. |

This criminal complaint is based upon these facts:

__X__ Continued on the attached sheet.

HAILEY EVANS
Task Force Officer, Drug Enforcement Administration (DEA)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: January 6, 2022

Judge's signature

City and state: Chicago, Illinois

SUNIL R. HARJANI, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, HAILEY EVANS, being duly sworn, state as follows:

1. I have been employed by the Village of Lisle Police Department since approximately September 2016, first as a Police Officer and currently as a Detective. Since approximately March 2019, I have been assigned as a Task Force Officer with Drug Enforcement Administration ("DEA") Chicago High Intensity Drug Trafficking Agency ("HIDTA") Group 43 located in Chicago, Illinois.

2. I have received training in and have experience investigating violations of federal narcotics laws including, but not limited to, Title 21, United States Code, Sections 841 and 846. I have participated in numerous investigations involving a variety of investigative techniques, including physical and electronic surveillance; controlled purchases and deliveries of narcotics; the analysis of a wide variety of records and data, including cellular phone location data and social media accounts; and the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

3. Through my involvement in prior investigations, my training and experience, and conversations with other law enforcement officers, I have become familiar with the methods used by narcotics traffickers to distribute, transport, store, and import illegal narcotics.

4. This affidavit is submitted in support of a criminal complaint alleging that OMAR KHAN has violated Title 21, United States Code, Section 841(a). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging KHAN with distribution of a controlled substance, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

5. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, physical surveillance, information provided by a confidential source, consensual recordings, and my experience and training, as well as the training and experience of other agents with whom I have spoken.

## Background of the Investigation

6. In and around November 2021, a Confidential Source ("CS-1") working with the DEA identified an individual CS-1 knew as "Slick", later identified as OMAR KHAN, as being involved in sale of narcotics.[1] In and around November 2021, KHAN reached out to CS-1 because KHAN knew CS-1 had previously been involved in

---

[1] CS-1 has prior criminal convictions for narcotics and larceny offenses. CS-1 was cooperating with law enforcement for financial payments. To date, CS-1 has been paid $2,500. Information provided by CS-1 has been corroborated based on recorded communications, surveillance, and multiple narcotics seizures. On December 14, 2021, CS-1 was deactivated as a DEA Confidential Source.

2

narcotics trafficking. KHAN provided CS-1 with the telephone number 312-826-3891 ("the KHAN phone") and KHAN told CS-1 to contact him using the KHAN phone.[2]

7. On or about November 18, 2021, CS-1 communicated with KHAN, who was using the KHAN phone, to set up a meeting at a gas station located on the 1800 block of West Peterson Avenue in Chicago, Illinois (hereinafter referred to as the "Peterson Avenue gas station"). On that same day, CS-1 met with KHAN at the Peterson Avenue gas station and purchased approximately 12 fentanyl pills from KHAN for $300. The gross weight of the pills was approximately 62 grams. The pills were sent to a laboratory for testing. It was determined that one of the pills preliminary tested positive for the presence of fentanyl.

8. On or about December 3, 2021, CS-1 communicated with KHAN, who was using the KHAN phone, to set up a meeting to purchase more fentanyl pills. During the communications, CS-1 told KHAN that CS-1 was bringing an associate, who unbeknownst to KHAN, was another Confidential Source ("CS-2") working with the DEA, to the buy.[3] CS-1 provided KHAN CS-2's phone number and instructed

---

[2] Law enforcement identified OMAR KAHN as follows: on or about November 15, 2021, a DEA analyst performed an analysis of the KHAN phone in a commercial database, and identified KHAN as the likely primary user of the KHAN phone. Law enforcement then showed CS-1 KHAN's official driver's license photo, and CS-1 confirmed that the individual CS-1 knew as "Slick" was OMAR KHAN. Law enforcement has also compared video recordings of meetings, including the meetings on November 18 and December 3, 2021, between CS-1 and CS-2 and another individual to KHAN's driver's license photo, and confirmed the individual to be KHAN.

[3] CS-2 has been cooperating with law enforcement since December 2019. CS-2 has 11 prior arrests and no convictions. CS-2 is cooperating with law enforcement for consideration on pending charges in New Orleans, relating to distribution of heroin. Information provided by CS-2 has been corroborated based on recorded communications, surveillance, and multiple narcotics seizures.

KHAN to communicate with CS-2. On that same day, CS-1 and CS-2 met with KHAN at the Peterson Avenue gas station and purchased approximately 100 suspect fentanyl pills from KHAN for $1,450. The gross weight of the pills was approximately 72.9 grams.[4] Each of the purchases completed by CS-1 and CS-2 from KHAN prior to December 28, 2021 were video and audio recorded.

## Facts Supporting Probable Cause

### *December 27, 2021: KHAN and CS-2 Set Up the Purchase of Fentanyl Pills*

9. On or about December 27, 2021, at approximately 1:30 p.m., CS-2, at the direction of law enforcement, sent a text message to the KHAN phone stating, "Yoo slick." Approximately one minute later, CS-2 sent another text message to the KHAN phone stating, "This T i need you." KHAN, from the KHAN Phone, replied, "Wats good."

10. At approximately 1:32 p.m., KHAN, from the KHAN Phone, called CS-2. The call was recorded.[5] KHAN and CS-2 begin the call by greeting each other. KHAN then asked, "You need me?" CS-2 replied, "Yeah tomorrow I'm uh slide up that way [to the Peterson Avenue gas station]. I need like 500 of them joints [fentanyl

---

[4] A preliminary field test was not performed on any of the pills purchased from KHAN on or about December 3, 2021.

[5] Where recorded conversations are discussed in this affidavit, the language that is quoted from the recorded conversations is based upon a preliminary review of the recorded conversations and not on final transcripts of the recorded conversations. Summaries and excerpts do not include all statements or topics covered during the course of the recorded conversations.

4

pills]."[6] KHAN replied, "Oh I'mma see how much I got, but ight I got you." CS-2 replied, "Okay let me know."

11. At approximately 7:54 p.m., CS-2 sent a text message to the KHAN Phone asking, "We good for that nickle [500 pills] tomorrow."

12. At approximately 8:36 p.m., CS-2 placed a consensually recorded call to KHAN who was using the KHAN Phone. CS-2 asked KHAN, "We on for tomorrow?" KHAN replied, "Yeah we on for tomorrow." CS-2 then asked, "Okay, uh you got the whole lick [the 500 pills] for me?" KHAN replied, "Yeah." The call ended. Approximately one minute later, KHAN, from the KHAN Phone, called CS-2. The call was recorded. KHAN asked, "What's the number [price] I told you last time?" CS-2 replied, "Uh shit uh what we do, what we do, uhh what we do 13 [$13 per pill] or some shit like that." KHAN replied, "Yeah uh give me uh 12-5 [$12.50 per pill] for the 5 [500 pills]." CS-2 then stated that CS-2 would be ready to meet KHAN around 1 p.m. the next day. KHAN replied, "Call me."

---

[6] At various points in the affidavit, I have included in brackets my interpretation of words and phrases used in recorded conversations. My interpretations are based on the contents and context of the recorded conversations, information provided by CS-1 and CS-2, events occurring before and after the conversations, my knowledge of the investigation as a whole, my experience and training, and the experience and training of other law enforcement agents in this investigation.

5

### *December 28, 2021: KHAN Sells Approximately 500 Fentanyl Pills to CS-2*

13. On or about December 28, 2021, at approximately 11:38 a.m., law enforcement set up surveillance ("surveillance officers") on KHAN's residence located on the 7800 block of Niles Center Road in Skokie, Illinois.[7]

14. At approximately 11:42 a.m., CS-2 placed a consensually recorded call to KHAN on the KHAN phone. CS-2 told KHAN that CS-2 was on his way to meet KHAN and would meet KHAN in about 30 to 40 minutes. KHAN told CS-2 to call KHAN when CS-2 arrived.[8]

15. At approximately 11:54 a.m., surveillance officers observed a white 2014 Toyota Camry bearing Illinois registration 895005 ("KHAN's vehicle")[9] pull into the driveway of KHAN's residence.

16. At approximately 12:14 p.m., surveillance officers observed KHAN's vehicle leave KHAN's residence. Surveillance officers maintained visual contact of KHAN's vehicle from KHAN's residence to the parking lot of the Peterson Avenue

---

[7] Law enforcement identified KHAN's residence based on searches of law enforcement and commercial databases. Further, law enforcement has previously conducted surveillance of KHAN and observed KHAN and KHAN's vehicle at this residence on or about December 3, 13, and 28, 2021.

[8] Based on previous transactions with KHAN, CS-2 knew to meet KHAN at the Peterson Avenue gas station.

[9] The white 2014 Toyota Camry bearing registration 985005 is registered to Charan SINGH at an address on the 4200 block of Howard Street in Skokie, Illinois. Surveillance officers have observed KHAN driving KHAN's vehicle on multiple occasions. Surveillance officers have also seen KHAN drive KHAN's vehicle when KHAN sold suspect fentanyl pills to CS-1 and CS-2, including on or about November 18 and December 3, 2021. In each purchase from KHAN, CS-1 and CS-2 entered KAHN's vehicle to purchase the pills.

gas station, arriving at approximately 12:34 p.m. Surveillance officers observed KHAN, who was driving the vehicle, and another individual inside KHAN's vehicle.

17. At approximately 12:19 p.m., law enforcement met with CS-2 at a predetermined briefing location. CS-2 was searched for weapons, contraband, and U.S. currency, with negative results. During the briefing, law enforcement equipped CS-2 with video/audio recording equipment and provided CS-2 with $6,500 in United States currency.

18. At approximately 12:35 p.m., KHAN, from the KHAN Phone, called CS-2 twice, which were both unanswered. At approximately 12:37 p.m., KHAN, from the KHAN Phone, called CS-2, which CS-2 answered. The call was recorded. KHAN asked CS-2, "What's the situation?" CS-2 told KHAN that CS-2 was still on the way to the meeting location. KHAN responded that CS-2 told him the same thing 40 minutes ago. CS-2 then told KHAN that there was traffic, and that CS-2 would be there soon. KHAN then told CS-2, "I left downtown right when you called me, I went to my OG's crib, flipped all of this [packaged the pills] and came back over here." CS-2 replied that CS-2 was getting off of Lakeshore Drive and would be there soon. KHAN then told CS-2 that KHAN "runs a tight ship," that he has COVID, and was "not trying to hear nothing." CS-2 told KHAN that CS-2 was on the way.

19. At approximately 12:39 p.m., CS-2 departed the briefing location in CS-2's vehicle ("the CSV"). Law enforcement maintained visual contact of the CSV for the entirety of the drive to the Peterson Avenue gas station.

20. At approximately 12:45 p.m., KHAN, from the KHAN Phone, called CS-2 The call was recorded. KHAN asked CS-2, "Do you want to do this tomorrow?" CS-2 responded that CS-2 was about two to three minutes away and in the area. KHAN then told CS-2 that KHAN was at the Peterson Avenue gas station waiting.

21. At approximately 12:46 p.m., surveillance officers observed CS-2 in the CSV arrive at the Peterson Avenue gas station.

22. At approximately 12:47 p.m., KHAN, from the KHAN Phone, called CS-2. The call was recorded. During this call, KHAN told the CS to meet him at "Pump 3." At the same time, surveillance officers observed the CSV and KHAN's vehicle move and park on the east side of the Peterson Avenue gas station parking lot.

23. At approximately 12:48 p.m., surveillance officers observed CS-2 exit the CSV, walk towards KHAN's vehicle, and enter the back seat of KHAN's vehicle.

24. Based on a review of the audio recording and a later debrief of CS-2, CS-2 went into the rear passenger-side seat of KHAN's vehicle.[10] According to CS-2, KHAN was in the driver's seat, and an unknown male subject with dark hair and beard was sitting in the front passenger seat. CS-2 saw a clear plastic bag containing small blue pills on KHAN's lap. Once inside the vehicle, CS-2 gave KHAN $3,000 in $100 dollar bills, $3,000 in $50 dollar bills and $300 in $20 dollar bills. According to CS-2 and the audio recording, CS-2 then asked KHAN to give him back one of the $50 dollar bills, which KHAN did. In total, CS-2 paid KHAN $6,250 in U.S. currency from

---

[10] The video function of the recording equipment malfunctioned. As a result, only audio was captured of the meeting between KHAN and CS-2.

8

DEA funds. According to CS-2, KHAN then grabbed the clear plastic baggie from his lap and passed the baggie to CS-2. CS-2 observed a large number blue, round pills imprinted with "M" on one side and "30" on the other side, inside the baggie. After KHAN passed the pills to CS-2, KHAN and CS-2 began speaking about the CS-2's narcotics activities. Based on the audio recording, KHAN stated, "So you the heavy." CS-2 replied, "I told ya I'd be needing really more than that [the 500 pills]." KHAN then asked, "How many more?" CS-2 responded, "Shit it depends, it depends on ya know really I move like two bricks [U/I]." Later, CS-2 and KHAN discussed the potency of the pills, and CS-2 told KHAN, "I wish I could get some of the real deal [straight fentanyl] ya know?" KHAN replied, "You want some straight raw fentanyl?" CS-2 replied, "Hell yeah." CS-2 and KHAN said goodbye and CS-2 exited KHAN's Vehicle.

25. At approximately 12:51 p.m., surveillance officers observed CS-2 exit KHAN's vehicle and walk back towards the CSV and enter the CSV.

26. At approximately 12:52 p.m., surveillance officers observed KHAN's vehicle exit the parking lot and drive Northbound on Wolcott Avenue. Surveillance officers observed KHAN's vehicle turn onto Eastbound Norwood Street. KHAN's vehicle then turned Southbound into an alley and surveillance on KHAN was terminated.

27. At approximately 12:53 p.m., surveillance observed the CSV exit the Peterson Avenue gas station parking lot and turn onto Northbound Wolcott Avenue. Surveillance officers immediately gained visual contact of the CSV until it was

9

observed by additional surveillance units at Norwood Street. Law enforcement then maintained visual contact of the CSV until the CSV arrived at the original brief location at approximately 12:59 p.m.

28. At approximately 1:02 p.m., investigators acquired the unused $250.00 in U.S currency, a small plastic baggie containing approximately 500 blue, round pills from CS-2, and the audio/video recording equipment. Investigators searched CS-2 and the CSV for weapons, additional contraband, and U.S. currency, with negative results.

29. Later that same day, law enforcement transferred the suspect fentanyl pills to the North Central Laboratory for chemical testing and safekeeping. One of the pills was field-tested and positively identified for the presence of fentanyl. The gross weight of the suspect fentanyl pills was approximately 130 grams.

## Conclusion

30. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that, on or about December 28, 2021, OMAR KHAN did knowingly and intentionally distribute a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-

(2-phenylethyl)-4-piperindinyl] propanamide, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a).

FURTHER AFFIANT SAYETH NOT.

*[signature]*

HAILEY EVANS
Task Force Officer, Drug Enforcement Administration

SWORN TO AND AFFIRMED by telephone January 6, 2022.

*[signature]*

Honorable SUNIL R. HARJANI
United States Magistrate Judge